**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

WILLIE BILLINGER,                              *

    *Plaintiff,*                              *

    v.                                       *    Civil Action No. RDB-25-0230

JULIAN MIN,                                    *
BALTIMORE POLICE
DEPARTMENT                                     *

    *Defendants.*                             *
\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

This matter arises from the investigation, prosecution, and conviction of Plaintiff Willie

Billinger ("Plaintiff" or "Mr. Billinger") for double homicide in Baltimore City, Maryland, in

2017. (ECF No. 1 ¶¶ 1–17.) On March 14, 2017, victims Earline Thomas ("Ms. Thomas")

and Howard Martin ("Mr. Martin") were discovered deceased in their apartment in Baltimore

City. (*Id.* ¶ 1.) Defendant Baltimore Police Department ("BPD") assigned Defendant

Detective Julian Min ("Officer Defendant" or "Det. Min") (collectively, "Defendants") to

investigate the deaths as homicides. (*Id.* ¶ 7.) After brief investigation over a period of

approximately two weeks, he obtained a warrant for Mr. Billinger's arrest. (*Id.*) On March 29,

2017, Mr. Billinger was arrested and charged with the murders of Ms. Thomas and Mr. Martin.

(*Id.* ¶ 8.) In 2018, following a trial in the Circuit Court for Baltimore City, Maryland, he was

convicted of two counts of second-degree murder and sentenced to thirty years' imprisonment

for each count, to be served consecutively. (*Id.* ¶¶ 12, 64.) After nearly eight years of

incarceration, Mr. Billinger was granted a new trial based on the Circuit Court for Baltimore

City's determination that the Office of the State's Attorney for Baltimore City violated *Brady v. Maryland*, 373 U.S. 83 (1963),[1] by failing to disclose Det. Min's prior misconduct. (*Id.* ¶¶ 14–16; ECF No. 16-3 at 2.)[2] Rather than pursue a new trial, the State of Maryland on January 29, 2024, entered a nolle prosequi[3] as to all counts against Mr. Billinger. (ECF No. 1 ¶ 17.)

On January 24, 2025, Mr. Billinger initiated this action by filing in this Court a ten-Count Complaint alleging various federal and state claims against Defendants. (ECF No. 1.) Against Det. Min, Plaintiff alleges (1) a 42 U.S.C. § 1983 claim for malicious prosecution under the Fourth and Fourteenth Amendments (Count I); (2) a 42 U.S.C. § 1983 claim for violation of due process under the Fourth and Fourteenth Amendments (Count II); (3) a 42 U.S.C. §1983 claim for violation of due process under the Fourteenth Amendment based on failure to adequately investigate and disclose exculpatory and impeachment evidence (Count III); (4) a 42 U.S.C. § 1983 claim for failure to intervene (Count IV); (5) a state-law claim for malicious prosecution (Count VI); (6) a state-law claim for intentional infliction of emotional distress (Count VII); (7) a state-law claim for abuse of process (Count VIII); and (8) a state-law claim

---

[1] In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that due process requires the State to disclose evidence favorable to a criminal defendant and material to his defense. *See Washington v. Pellegrini*, 125 F.4th 118, 131 (4th Cir. 2025); *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972) (providing elements of *Brady* violation).

[2] Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of matters of public record, including "the filings and rulings in" an underlying state case. *Tokornoo v. Helwig*, Civ. No. TDC-15-2652, 2017 WL 4898260, at *1 n.1 (D. Md. Oct. 27, 2017) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Jackson v. Brown*, Civ. No. SAG-25-0492, 2025 WL 3640364, at *3, *5 (D. Md. Dec. 16, 2025) (taking judicial notice of decision of Circuit Court for Baltimore City). This Court takes judicial notice of the opinion of the Circuit Court for Baltimore City (ECF No. 16-3) that granted Mr. Billinger a new trial in his state criminal case but does not credit any legal conclusions therein. *See McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 279 (D. Md. 2020) (explaining court may take judicial notice of another court's opinion but may not credit that court's legal conclusions).

[3] Maryland's highest court has "defined entering a nolle prosequi 'as an official declaration by the State, announcing that it will not pursue the charges in a particular charging document.'" *State v. Simms*, 175 A.3d 681, 685 (Md. 2017) (quoting *Gilmer v. State*, 887 A.2d 549, 550 n.2 (Md. 2005)); Md. Rule 4-247(a) ("The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court.").

for violation of Maryland Declaration of Rights Article 24 (Count IX). (ECF No. 1 at 13–19.) Against Defendant BPD, Mr. Billinger alleges (1) a *Monell*[4] claim under 42 U.S.C. § 1983 and the Fourteenth Amendment (Count V); and (2) a state-law claim for indemnification (Count X). (ECF No. 1 at 16–17, 20).

Presently pending before this Court are two motions filed by Defendants pursuant to Federal Rule Civil Procedure 12(b)(6): (1) Det. Min's Motion to Dismiss (ECF No. 11) ("Det. Min's Motion"); and (2) BPD's Motion to Dismiss for Failure to State a Claim (ECF No. 10) ("BPD's Motion"). Plaintiff has responded in Opposition to both Motions, *see* (ECF Nos. 16, 17), and Defendants have replied, *see* (ECF Nos. 21, 22). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Det. Min's Motion (ECF No. 11) is GRANTED IN PART and DENIED IN PART. Specifically, Det. Min's Motion (ECF No. 11) is GRANTED with respect to the failure to intervene claim in Count IV and the abuse of process claim in Count VIII, but his Motion is DENIED as to Counts I, II, III, VI, VII, and IX. Similarly, as explained below, BPD's Motion (ECF No. 10) is DENIED. Specifically, BPD's Motion (ECF No. 10) is DENIED as to the *Monell* claim in Count V to the extent it rests on a theory of failure-to-train and DENIED as to the indemnification claim in Count X.

## BACKGROUND

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

---

[4] In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the U.S. Supreme Court determined that local governmental bodies may be liable under Section 1983 based on the unconstitutional conduct of individual defendants if those defendants were executing an official policy or custom of the local government when they violated a plaintiff's rights. *Id.* at 690.

this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  The following facts are derived from Plaintiff's Complaint (ECF No. 1) and accepted as true for the purpose of Defendants' motions.

## I. Investigation, Arrest, and Conviction of Mr. Billinger

On March 14, 2017, Baltimore police officers discovered deceased victims Earline Thomas ("Ms. Thomas") and Howard Martin ("Mr. Martin") in an apartment on St. Paul Street in Baltimore City.  (ECF No. 1 ¶¶ 35, 36.)  Defendant Baltimore Police Department ("BPD") assigned Defendant Detective Min ("Det. Min") to lead the ensuing homicide investigation.  (*Id.* ¶¶ 36, 37.)  Mr. Billinger alleges that Det. Min failed to properly investigate the murders and instead targeted Mr. Billinger for arrest.  (*Id.* ¶¶ 7, 10, 56.)

During the investigation, an individual named Tyrone Rice informed Det. Min that, on the night of the murders, he was present at the victims' apartment to buy drugs, and additional investigation established that people often visited the apartment for drug-related matters.  (*Id.* ¶¶ 38, 39.)  Although Tyrone Rice admitted his presence at the apartment on the night of the murders, Det. Min did not further investigate him as a suspect.  (*Id.* ¶ 40.)  BPD also obtained a blood swab from a banister immediately outside the victims' apartment, which returned a Combined DNA Index System ("CODIS") match for a man named Kevin Jones ("Mr. Jones").  (*Id.* ¶¶ 3, 40, 42.)  Separately, the investigation revealed that Ronald Gunther ("Mr. Gunther") had a key to the victims' apartment, visited the complex multiple times each week, and was in the complex on the night the victims' bodies were discovered.  (*Id.* ¶¶ 44, 45.)

BPD's investigation also revealed that Lamont Rice had discovered the victims' bodies, and the apartment had been ransacked and contained no furniture at the time the bodies were discovered. (*Id.* ¶¶ 47, 49.)

Mr. Billinger alleges that Det. Min took no steps to pursue Mr. Jones, Mr. Gunther, or Lamont Rice as suspects, and he did not investigate the whereabouts of the missing furniture. (*Id.* ¶¶ 43, 46, 48, 50.)  Rather, based on Tyrone Rice's statement, Det. Min filed a Statement of Charges against Mr. Billinger. (*Id.* ¶ 52.)  On March 29, 2017, Mr. Billinger was arrested and charged with both murders. (*Id.* ¶ 8.)  He maintained his innocence and asserted that he was in an in-patient drug treatment facility at the time of the murders. (*Id.* ¶¶ 9, 52.)  Although Det. Min promised that he would investigate the movement of Mr. Billinger's cell phone on the night of the murders, he investigated neither the cellphone movement nor Mr. Billinger's asserted alibi. (*Id.* ¶¶ 53, 55.)  The case then proceeded to trial.

Mr. Billinger alleges that Det. Min concealed facts from the prosecution and defense counsel and testified falsely at his murder trial. (*Id.* ¶¶ 57, 54.)  He alleges that Det. Min concealed or did not disclose that Tyrone Rice (1) had committed a burglary with similar facts just two months before the murders; (2) had a pending burglary charge; and (3) received a benefit in his own criminal case in exchange for his testimony at Mr. Billinger's trial. (*Id.* ¶¶ 54, 61.)  Mr. Billinger alleges that the facts of Tyrone Rice's case could have implicated him as the person who ransacked the victims' home, and Det. Min's concealment of such facts contributed to his conviction and incarceration. (*Id.* ¶¶ 62, 63.)  Moreover, Mr. Billinger alleges that Det. Min falsely testified that he eliminated Mr. Jones as a suspect by presenting Mr. Jones'

photograph to the victims' neighbors, but no such photograph existed, and no such presentation occurred.  (*Id.* ¶¶ 57–60.)

Relatedly, Mr. Billinger alleges that Det. Min concealed his own past misconduct from the prosecution and defense at Mr. Billinger's trial.  (*Id.* ¶¶ 74, 81.)  Personnel files reflected that BPD investigated Det. Min in 2003 and ultimately sustained allegations that he made a false statement, wrote a false report, and subjected an individual to inappropriate detention.  (*Id.* ¶ 75.)  Specifically, Det. Min arrested a maintenance worker for burglary after refusing to acknowledge the worker's attempts to prove that his presence was lawful.  (*Id.*)  The State ultimately dismissed the charges against the maintenance worker.  (*Id.* ¶ 77.)  Det. Min then lied about the incident in a statement of probable cause and made false statements during the resulting Internal Affairs Department ("IAD") investigation, which concluded that he had committed misconduct and recommended termination.  (*Id.* ¶¶ 76, 78.)  Det. Min was not terminated, however, and he remained a BPD officer for the next twenty years.  (*Id.* ¶ 79.)  Det. Min's IAD files reflect further misconduct during that period, including providing a false statement during another homicide investigation.  (*Id.* ¶ 80.)

Mr. Billinger was convicted of two counts of second-degree murder, and he received consecutive sentences of thirty years' imprisonment for each count.  (*Id.* ¶ 64.)  Mr. Billinger professed his innocence at his sentencing and was incarcerated for more than seven years before he was granted a new trial.  (*Id.* ¶¶ 65, 90, 85.)  His mother, uncle, aunt, and cousins died while he was incarcerated, and he missed time with his children.  (*Id.* ¶¶ 89–90, 92.)  On December 2, 2019, then-Baltimore City Solicitor Marilyn Mosby announced a "Do Not Call List" of 305 police officers with integrity concerns.  (*Id.* ¶ 82.)  After the list became public on

May 26, 2022, Mr. Billinger discovered Det. Min's name on the list.  (*Id.* ¶ 83.)  On May 5, 2023, the Circuit Court for Baltimore City, Maryland granted Mr. Billinger a new trial based on its conclusion that the State committed a *Brady*[5] violation by failing to provide defense counsel information regarding Det. Min's "sustained misconduct for perjury."  (*Id.* ¶ 85; ECF No. 16-3 at 1, 2, 9, 10–11.)[6]  On January 29, 2024, the State of Maryland entered a nolle prosequi in Mr. Billinger's criminal case.  (*Id.* ¶ 87.)

## II.    United States Department of Justice Investigation of Baltimore Police Department

Mr. Billinger alleges that the practices that led to his conviction were part of the Baltimore Police Department's ("BPD") longstanding pattern and practice of unconstitutional conduct during homicide investigations.  (*Id.* ¶ 66.)  Specifically, he alleges that BPD's "policy, practice, or custom of fabricating inculpatory evidence, withholding exculpatory and impeachment evidence from prosecutors, attorneys, and judges, and, in bad faith, failing to conduct investigations in order to shield earlier wrongful acts" during homicide investigations contributed to his unlawful conviction.  (*Id.* ¶¶ 69, 70.)  According to Plaintiff, Det. Min and other members of BPD systematically concealed *Brady* material in his case and others.  (*Id.* ¶ 71.)  He alleges that although BPD knew of such conduct, it did not provide adequate training, which facilitated and perpetuated unconstitutional conduct.  (*Id.* ¶¶ 72, 73.)

---

[5] As noted above, under *Brady v. Maryland*, 373 U.S. 83 (1963), due process requires the State to disclose evidence favorable to a criminal defendant and material to his defense.  *See Pellegrini*, 125 F.4th at 13; *Moore*, 408 U.S. at 794–95.

[6] When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may only consider the pleadings, items "integral to and explicitly relied on in the complaint," and facts of which it may take judicial notice. *Am. Chiropractic v. Tricron Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  A court "is permitted to take judicial notice of the existence of another court's opinion, [but] it cannot credit the facts found by that court." *McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 279 (D. Md. 2020).

Plaintiff alleges that on or about August 16, 2016, the United States Department of Justice ("DOJ") published a 163-page report ("DOJ Report") of its investigation of BPD. (ECF No. 1 ¶ 29.) That DOJ Report concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law[,]" including conduct related to unconstitutional stops, searches and arrests; use of excessive force; and retaliation against individuals "engaging in constitutionally-protected expression." (*Id.* ¶ 30.) The DOJ Report further determined that BPD arrest data showed disparities between the frequency of arrests of African Americans and arrests of individuals of other races, particularly regarding arrests for "highly discretionary offenses." (*Id.* ¶ 31.) Additionally, the DOJ Report suggested that "BPD's inadequate policies and training contribute to the Department's pattern or practice of constitutional violations." (*Id.* ¶ 32.) The DOJ Report identified "[s]erious deficiencies in BPD's supervision of its enforcement activities," including the absence of "an adequate early intervention system . . . to identify officers based on patterns in their enforcement activities, complaints, or other criteria" that contributed to its "failure to identify and correct unconstitutional policing." (*Id.* ¶ 33.) Plaintiff alleges that the DOJ Report concluded that "BPD relies on deficient accountability systems that fail to curb unconstitutional policing." (*Id.* ¶ 34.)

### III.    Procedural History

On January 24, 2025, Mr. Billinger initiated this action by filing in this Court a ten-Count Complaint against Defendants, alleging state tort and state- and federal constitutional violations. *See generally* (ECF No. 1). Against Det. Min, Mr. Billinger alleges (1) malicious prosecution in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments

(Count I); (2) violation of due process in violation of § 1983 and the Fourteenth Amendment (Count II); (3) violation of due process via failure to adequately investigate and disclose exculpatory and impeachment evidence in violation of § 1983 and the Fourteenth Amendment (Count III); (4) failure to intervene in violation of § 1983 (Count IV); (5) a state law claim of malicious prosecution (Count VI); (6) a state-law claim of intentional infliction of emotional distress (Count VII); (7) a state-law claim of abuse of process (Count VIII); and, (8) a state constitutional claim of violation of Article 24 of the Maryland Declaration of Rights (Count IX). (ECF No. 1 at 13–19.) Against BPD, Mr. Billinger alleges two claims: (1) a *Monell* claim for violation of § 1983 and the Fourteenth Amendment (Count V); and (2) a state-law claim for indemnification (Count X). (ECF No. 1 at 16–17, 20.)

BPD then filed a Motion to Dismiss for Failure to State a Claim (ECF No. 10) ("BPD's Motion"), and Det. Min filed a separate Motion to Dismiss (ECF No. 11) ("Det. Min's Motion"). Plaintiff filed separate Responses in Opposition, (ECF Nos. 16, 17), and Det. Min and BPD each replied, (ECF Nos. 21, 22). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). This matter is now ripe for review.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I.    Det. Min's Motion to Dismiss (ECF No. 11)[7]

#### A.  Federal Claims

In his Motion (ECF No. 11), Det. Min contends that the federal claims against him should be dismissed as inadequately alleged or, alternatively, barred by qualified immunity.

---

[7] Mr. Billinger's claims against Det. Min form the basis for his *Monell* and indemnification claims against BPD. *See* (ECF No. 1 ¶ 118, 148). Accordingly, the Court first addresses Det. Min's Motion to Dismiss before reaching BPD's Motion.

(ECF No. 11 at 4.)  In Opposition, Mr. Billinger concedes that his § 1983 claim for failure to intervene in Count IV should be dismissed.  (ECF No. 16-1 at 12.)  He argues, however, that his remaining federal claims are sufficiently alleged, and Det. Min is not entitled to qualified immunity.  (ECF No. 16-1 at 5–18.)   As an initial matter, because the parties agree that the § 1983 claim for failure to intervene in Count IV should be dismissed, Det. Min's Motion is GRANTED as to Count IV, which is DISMISSED.[8]  The Court discusses the remaining federal claims below before addressing qualified immunity at this early stage.

### i.        Count I: 42 U.S.C. § 1983 Claim for Malicious Prosecution

As the U.S. Court of Appeals for the Fourth Circuit has explained, "[a] 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)).  As both parties agree, therefore, § 1983 claims for malicious prosecution arise under the Fourth Amendment only.  *Id.* at 646 n.2, 647; (ECF No. 11-1 at 10; ECF No. 16-1 at 5).[9]  As explained below, Mr. Billinger has alleged facts sufficient to state a § 1983 claim of malicious prosecution under the Fourth Amendment in Count I.

---

[8]  A § 1983 claim against a police officer for failure to intervene requires a showing that the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted).  Thus, officers "cannot be held liable for both participating in the injury and failing to prevent the injury." *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 163 (D. Md. 2023) (quoting *Weeden v. Prince George's Cnty.*, Civ. No. GJH-17-2013, 2018 WL 2694441, at *5 (D. Md. June 4, 2018)).  In this case, "Plaintiff agrees that Count IV of his Complaint should be dismissed, as Plaintiff does not allege that any officer besides Defendant Min violated his constitutional rights."  (ECF No. 16-1 at 12.)

[9]  Plaintiff "acknowledges that a claim for malicious prosecution arises under the Fourth Amendment, and not the Fourteenth Amendment," and states that "[t]he identification of the Fourteenth Amendment in Count I . . . was in error."  (ECF No. 16-1 at 5.)  To the extent Plaintiff alleges Count I under the Fourteenth Amendment, he has not stated a claim for relief, and any theory of relief under the Fourteenth Amendment as

To state a claim for malicious prosecution under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans*, 703 F.3d at 647 (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). Det. Min argues that Mr. Billinger has not sufficiently alleged the second element of malicious prosecution. (ECF No. 11-1 at 8–9.) First, he asserts that the indictment supporting Mr. Billinger's prosecution establishes a presumption of probable cause throughout his criminal case. (*Id.* at 9–10.) Second, and relatedly, he argues that Mr. Billinger has not alleged that the warrant justifying his arrest was unsupported by probable cause. (*Id.* at 9.) Plaintiff contends, however, that he has alleged facts sufficient to create "a dispute" as to whether Det. Min could reasonably have believed that there was probable cause for his arrest.[10] (ECF No. 16-1 at 6–7.)

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Harris v. Town of S. Pines*, 110 F.4th 633, 639 (4th Cir. 2024) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). To evaluate probable cause, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* (quoting

---

to Count I must be dismissed. *See Evans*, 703 F.3d at 646 n.2. Nevertheless, as explained above, he has alleged acts sufficient to state a claim under the Fourth Amendment in Count I.

[10] Plaintiff frames his argument in terms applicable to a motion for summary judgment, which is granted only where there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion to dismiss, however, a court only evaluates whether, accepting as true all facts in the complaint and drawing all reasonable inferences to favor the plaintiff, the plaintiff has alleged facts sufficient to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*Dist. Of Columbia v. Wesby*, 538 U.S. 48, 56–57 (2018)).  Generally, an indictment "is conclusive evidence that the officers had probable cause to arrest" such that they will not be held "liable for an unlawful seizure post-indictment."  *Id.* at 643 (first citing *Durham*, 690 F.3d at 189; and then citing *Evans*, 703 F.3d at 648).  Nevertheless, an indictment will not prevent liability "when an officer 'misled or pressured the prosecution.'"  *Id.* (quoting *Evans*, 703 F.3d at 648).  A plaintiff need not establish that an officer falsely testified—or testified at all—before the grand jury.  *Id.* at 644.  Rather, an officer who withholds "exculpatory information by failing to inform prosecutors of a broad swath of information the[] investigation . . . uncovered" may be liable for malicious prosecution despite the indictment.  *See id.* at 643–44 (concluding presumption did not apply because probable cause "would have been undermined by the evidence that [another suspect] was seen at the Cadillac, that he was a known drug dealer, and that the packaging of the drugs matched packaging of cocaine found at the home of [the other suspect's] supplier"); *Evans*, 703 F.3d at 648 (explaining officer may be liable where he "failed to disclose exculpatory evidence to the prosector").

At the pleading stage, therefore, a plaintiff need only allege that an officer "omitted from th[e] [warrant] application 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading[.]'"  *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 556 (4th Cir. 2017) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)).  As Judge Chasanow of this Court has explained, "[w]ith respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'"  *Dunbar v. Biedlingmaier*, Civ. No. DKC-20-0738, 2022 WL 814293, at *7 (D. Md. Mar. 17, 2022) (quoting

*Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)); *accord Humbert*, 866 F.3d at 556. Liability by omission requires knowledge or recklessness, however, and "'allegations of negligence or innocent mistake' by a police officer will not provide a basis for a constitutional violation." *Dunbar*, 2022 WL 814293, at *7 (quoting *Franks v. Del.*, 438 U.S. 154, 171 (1978)).

In this case, Mr. Billinger has alleged that Det. Min withheld significant information from the Statement of Probable Cause.[11] Specifically, he has alleged that Det. Min failed to disclose that (1) a blood sample collected from the banister outside the victims' apartment belonged to Mr. Jones, (ECF No. 1 ¶ 42); (2) Tyrone Rice, the sole eyewitness, was present at the victims' apartment the night of the murders, (*id.* ¶ 38); (3) none of the DNA or blood-spatter evidence collected belonged to Mr. Billinger, (*id.* ¶ 4); (4) Tyrone Rice had committed a burglary two months before the murders and that burglary had "facts uncannily similar to the ransacking of the victims' apartment," (*id.* ¶ 54); (5) Tyrone Rice provided contradicting accounts of what he had witnessed, (*id.* ¶ 6); and (6) Mr. Gunther had a key to the victims'

---

[11] Det. Min asserts that the Statement of Probable Cause is not appropriate for consideration because Mr. Billinger failed to include it in his pleadings. (ECF No. 21 at 3.) Courts may consider "a *document* outside the complaint at the motion to dismiss stage when the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). "In addition to the factual allegations, the court may also consider any documents referred to in the complaint and relied upon to justify a cause of action—even if the documents are not attached as exhibits to the complaint." *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (first citing FED. R. CIV. P. 10(c); and then citing *New Beckley Mining Corp. v. Int'l Union*, 18 F.3d 1161, 1164 (4th Cir. 1994)). As Chief Judge Russell of this Court has recognized, a statement of probable cause is "clearly integral" to a Complaint that "brings claims for unreasonable search and seizure and malicious prosecution." *Litchfield v. Rinehart*, Civ. No. GLR-21-2101, 2023 WL 7410857, at *6 n.2 (D. Md. Nov. 9, 2023). In this case, Mr. Billinger references both the statement of probable cause and the Statement of Charges in his Complaint, *see* (ECF No. 1 ¶¶ 76, 51), attaches the Statement of Probable Cause to his Opposition to Det. Min's Motion, (ECF No. 16-2), and asserts that it is the basis for his malicious prosecution. (ECF No. 16-1 at 6.) The Statement of Probable Cause is an official document from the District Court of Maryland for Baltimore City, and Det. Min does not dispute its authenticity. *See* (ECF No. 16-2). Accordingly, it is appropriate for consideration.

apartment and visited the apartment complex multiple times per week, (*id.* ¶ 44). *See* (ECF No. 16-1 at 6). Instead, the Statement or Probable Cause cited only that a witness present at the murder "positively identified" Mr. Billinger via a "photographic array" as the person responsible for the victims' deaths. (ECF No. 16-2 at 2–3.)

Construing all facts in the light most favorable to Mr. Billinger, he has sufficiently alleged that Det. Min recklessly omitted facts material to probable cause at least by failing to provide: (1) the DNA and blood-spatter evidence results, and (2) Tyrone Rice's prior burglary with facts similar to those of the murder for which he was the only eyewitness. Where a statement of probable cause is based solely on witness identification, failure to include facts that would diminish the reliability of that identification may constitute reckless disregard for the purposes of a malicious prosecution claim. *Humbert*, 866 F.3d at 558. In this case, the DNA and blood-spatter evidence and Tyrone Rice's criminal history could have undermined his identification of Mr. Billinger from a photographic array, which appears to have formed the basis for probable cause. *See Harris*, 110 F.4th at 643–44; (ECF No. 16-2 at 2, 3 (stating unidentified witness present at murder identified Mr. Billinger from photographic array)). Put differently, such facts could have significantly diminished Tyrone Rice's credibility and the accuracy of his identification. Accordingly, at this pleading stage, Mr. Billinger has alleged facts sufficient to overcome the presumption of probable cause based on his indictment.

Absent such presumption, Mr. Billinger has alleged facts sufficient to allege that Det. Min arrested him without probable cause. That is, Mr. Billinger has alleged that the facts in this case when "viewed from the standpoint of an objectively reasonable police officer," did not "amount to probable cause." *Harris*, 110 F4th at 639 (quoting *Wesby*, 538 U.S. at 56–57).

Specifically, he has alleged that blood and DNA evidence did not connect him to the crime; the sole witness able to identify him offered conflicting accounts and had been charged for a prior burglary with circumstances very similar to those of the homicides at issue; and another potential suspect had a key to the victims apartment and visited the apartment at least weekly. (ECF No. 1 ¶¶ 42, 38, 4, 54, 6, 44.)  Construing these facts in the light most favorable to Plaintiff, Mr. Billinger has alleged that a reasonable officer would not have believed that he had probable cause to arrest Mr. Billinger for the murder based solely on Tyrone Rice's identification.  At this pleading stage, therefore, Mr. Billinger has sufficiently alleged that Mr. Min caused his arrest without probable cause and his criminal proceedings terminated in his favor.[12]  Thus, he has stated a claim for malicious prosecution under § 1983 in Count I.

### ii.   Count II: 42 U.S.C. § 1983 Claim for Violation of Due Process under the Fourteenth Amendment based on fabrication of evidence

To plead a claim of violation of substantive due process in violation of the Fourteenth Amendment based on fabrication of evidence, a plaintiff must allege "(1) that officers fabricated or omitted material evidence; (2) that he suffered a loss of liberty; and (3) that the loss of liberty was caused by the fabricated evidence." *Harris v. Town of S. Pines*, 110 F.4th 633, 645 n.6 (4th Cir. 2024) (citing *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014).  "Fabricated evidence" may include false testimony.  *See McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269,

---

[12] Mr. Billinger has sufficiently alleged that the criminal case terminated in his favor by alleging that the State of Maryland ultimately entered a nolle prosequi as to the charges against him. *See, e.g., Peters v. City of Mt. Ranier*, Civ. No. GJH-14-0955, 2014 WL 4855032, at *12 (D. Md. Sep. 29, 2014) ("By all indications, [Plaintiff's] criminal proceeding terminated in his favor when all of the charges against him were *nol prossed* on August 3, 2012."); *Mendoza v. Anne Arundel Cnty.*, Civ. No. JRR-23-1383, 2024 WL 1243839, at *12 (D. Md. Mar. 22, 2024) ("The final element requires that proceedings were terminated in Plaintiff's favor, including a *nolle prosequi*; but Plaintiff need not show 'that the criminal prosecution ended with some affirmative indication of innocence.'" (quoting *Thompson v. Clark*, 596 U.S. 36, 49 (2022)).

282–83 (D. Md. 2020) (holding plaintiff adequately stated claim for relief based on allegation that police "designed the fabricated statements to corroborate each other"). In this case, however, Det. Min contends that alleged false testimony cannot form the basis of a claim for violation of due process based on fabrication of evidence. *See* (ECF No. 21 at 6–7). Notwithstanding Det. Min's distinction between false testimony and fabricated evidence, Mr. Billinger has alleged facts sufficient to state a claim that Det. Min fabricated evidence and omitted material evidence that caused his loss of liberty.

Many courts have recognized that a claim of fabrication of evidence may rest on false testimony. Judge Hurson of this Court has noted that "[t]he Fourth Circuit has recognized a due process claim for fabrication of evidence on the basis of coercing a witness into providing false testimony." *Thomas v. Balt. Police Dep't*, Civ. No. BAH-23-3379, 2025 WL 81950, at *8 (D. Md. Jan. 10, 2025) (citing *Gilliam v. Sealey*, 932 F.3d 216, 240 (4th Cir. 2019)); *see also McPherson*, 494 F. Supp. 3d at 282–83. Federal district courts outside the Fourth Circuit have suggested that a fabrication of evidence claim may be based on an officer's false testimony. *See, e.g.*, *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 425, 430 (E.D. Pa. 2019) (declining to dismiss claim of fabrication of evidence based on officer's support of false testimony); *Williams v. City of Boston*, 974 F. Supp. 2d 13, 14, 15–16 (D. Mass. 2013) (recognizing claim of fabrication of evidence based on officer's false testimony at pretrial hearing but concluding officer was entitled to immunity). Moreover, allegations that an officer fabricated evidence during an investigation are sufficient to allege a fabrication of evidence under § 1983. *See Willis v. Blevins*, 966 F. Supp. 2d 646, 657–58 (E.D. Va. 2013) (declining to dismiss § 1983 claim based on fabrication of evidence where plaintiff alleged that defendant "fabricated photographs of

the alleged crime scene"). In this case, Mr. Billinger has alleged that Det. Min (1) testified falsely at trial regarding Tyrone Rice's burglary charge, his own prior misconduct, and his actions in eliminating Mr. Jones as a suspect, *and* (2) fabricated the existence of a photograph during the investigation. (ECF No. 1 ¶¶ 57–61, 75–81, 57–58.) At this stage therefore, he has alleged facts sufficient to state a § 1983 claim of violation of due process based on fabrication of evidence in Count II.

### iii. Count III: Violation of Due Process under the Fourteenth Amendment based on Failure to Adequately Investigate and Disclose Exculpatory and Impeachment Evidence

In Count III, Plaintiff alleges that Det. Min failed to adequately investigate exculpatory evidence—including Plaintiff's assertion of an alibi—in a manner that violated his "duty to report to prosecutors all exculpatory and impeachment materials" under the Fourteenth Amendment. (ECF No. 1 ¶ 109.) This allegation implicates both a police officer's liability for deliberate or reckless failure to investigate and the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963), that the State and its agents must disclose all exculpatory and impeachment materials to a criminal defendant. Det. Min argues that Mr. Billinger has failed to allege both forms of liability. The Court addresses each assertion in turn.

### 1. Failure to Investigate

A police officer may be liable under § 1983 where he deliberately or recklessly fails "to investigate readily available exculpatory evidence . . . ." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). "Allegations that a police officer acted negligently do not state a claim for a Fourteenth Amendment violation actionable under [Section] 1983." *Wheeler v. Anne Arundel Cnty.*, Civ. No. JFM-08-2361, 2009 WL 2922877, at *5 (D. Md. Sep. 8, 2009) (quoting *Romero*

*v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995)); *accord Simmons v. McElveen*, 846 F.2d 337, 338–39 (5th Cir. 1988) (declining to hold officers liable for failure to investigate because their conduct was merely negligent).  In this case, Plaintiff alleges that Det. Min "failed to adequately investigate the crime, including pursuing leads pointing to the true perpetrator . . . ."  (ECF No. 1 ¶ 109.)  Det. Min contends that Plaintiff's Count III must be dismissed to the extent it is premised on failure to investigate because Plaintiff has not alleged that Det. Min acted deliberately or recklessly.  (ECF No. 11-1 at 12.)

At this pleading stage, Plaintiff has alleged facts sufficient to state a claim that Det. Min at least recklessly failed to investigate readily available exculpatory evidence.  As this Court and the U.S. Court of Appeals for the Fourth Circuit have recognized, an officer's decision not to investigate an asserted alibi may indicate deliberate or reckless intent sufficient for liability.  *See Clipper v. Takoma Park*, 876 F.2d 17, 19 (4th Cir. 1989) (affirming jury verdict against officers on § 1983 claim where evidence showed that officers did not "pursue[] evidence they might have obtained from individuals who would have told them that [the plaintiff] could not have robbed the bank because he was at another place at the time of the robbery"); *Mendoza v. Anne Arundel Cnty.*, Civ. No. JRR-23-1383, 2024 WL 1243839, at *12 (D. Md. Mar. 22, 2024) (explaining plaintiff alleged reckless failure to investigate where he alleged that officers declined to interview eyewitnesses, review video evidence that would have corroborated the plaintiff's account of the incident); *cf. Humbert v. O'Malley*, Civ. No. WDQ-11-0440, 2014 WL 1266673, at *13 n.46 (D. Md. Mar. 25, 2014) (explaining plaintiff failed to establish officer's deliberate conduct where he "proffered no evidence that he told officers he had an alibi").

19

Although "the failure to pursue a potentially exculpatory lead" does not inherently negate probable cause, courts must consider the reasonableness of an officer's decision to pursue arrest in context. *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (citing *Clipper*, 876 F.2d at 20). Thus, a plaintiff may adequately allege failure to investigate under § 1983 where he alleges that he identified exculpatory evidence to officers, the officers declined to act on that evidence, and that decision was unreasonable given the facts of the case. *See, e.g.*, *Mendoza*, 2024 WL 1243839, at *12. An officer's liability for failure to pursue exculpatory information thus depends on whether the information was "readily available exculpatory evidence of which he [was] aware" or merely a potentially exculpatory lead not worth significant weight given the broader available evidence. *See Wadkins*, 214 F.3d at 541; *Clipper*, 876 F.2d at 20.

In this case, Mr. Billinger has alleged that he informed Det. Min that he was at an in-patient drug treatment facility at the time of the murders, but Det. Min declined to investigate that asserted alibi. (ECF No. 1 ¶¶ 52–53.) Plaintiff has also alleged that Det. Min failed to investigate the DNA evidence connecting Mr. Jones to the scene and failed to investigate Tyrone Rice, Lamont Rice, Mr. Jones, and Mr. Gunther as suspects. (*Id.* ¶¶ 43, 46, 48.) At this pleading stage, these facts are sufficient to allege a § 1983 claim for failure to investigate readily available exculpatory evidence. Although an officer is not required to pursue every potentially exculpatory lead, Mr. Billinger's asserted alibi would have cleared him of suspicion because the in-patient treatment facility could have confirmed his whereabouts during the crime. When considered with the other potentially exculpatory evidence—including potential suspects—that Det. Min declined to investigate, his failure to pursue the alibi lead is sufficient

to allege recklessness and to state a claim for § 1983 liability at this early stage. *See, e.g.*, *Mendoza*, 2024 WL 1243839, at *12.

### 2. Failure to Disclose Exculpatory Evidence

As Judge Hurson of this Court has explained, to state a claim that a police officer failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), "a plaintiff must allege '(1) the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued.'" *Thomas*, 2025 WL 81950, at *8 (quoting *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 396–97 (4th Cir. 2014)); *accord Burgess v. Goldstein*, 997 F.3d 541, 550 (4th Cir. 2021). Judge Hollander of this Court has recognized that "[a] plaintiff need not demonstrate bad faith directly; it can be inferred through gross deviations from routine police conduct." *Johnson v. Balt. Police Dep't*, Civ. No. ELH-19-0698, 2020 WL 1169739, at *24 (D. Md. Mar. 10, 2020). In this case, Det. Min asserts that dismissal is appropriate because Plaintiff fails to allege that he concealed evidence or that he acted in bad faith. (ECF No. 11-1 at 16–20.)

Mr. Billinger has adequately alleged that the evidence allegedly concealed—including Det. Min's past misconduct and that Tyrone Rice received a benefit for his testimony and was a defendant in a burglary case at the time of Mr. Billinger's trial—was favorable to him. Evidence is favorable where it "would have lent support to the" defendant's asserted defense, would have discredited testimony, or "sow[n] reasonable doubt in the minds of the jurors." *Owens*, 767 F.3d at 397 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Evidence that Tyrone Rice had committed a similar burglary and received a benefit in his own criminal case for his testimony *and* that Det. Min had a documented history of misconduct as an officer,

including misconduct related to making false statements, at the very least could have discredited their testimony in a manner favorable to Mr. Billinger. Accordingly, like the parties, this Court focuses its analysis on the bad faith and prejudice elements of Mr. Billinger's claim in Count III.

"[B]ad faith can be inferred when police officers fabricate evidence and fail to disclose especially pertinent exculpatory evidence." *Johnson*, 2020 WL 1169739, at *24; *see also Burgess v. Balt. Police Dep't*, Civ. No. RDB-15-0834, 2017 WL 4947004, at *10–11, 13 (D. Md. Oct. 31, 2017). In this case, Mr. Billinger has alleged that Det. Min fabricated evidence about the existence of a photograph that purportedly ruled out Mr. Jones as a suspect and failed to disclose Tyrone Rice's pending burglary charge and the benefit that he received for testifying.[13] Although any benefit Tyrone Rice received for testifying may fall within the purview of the prosecutor, Maryland rules specify that "the State's Attorney is not required to investigate the criminal record of the witness unless the State's Attorney knows or has reason to believe that the witness has a criminal record[.]" (ECF No. 11-1 at 17 (quoting Md. Rule 4-263(d)(6)(C)).) Construing all facts and drawing all inferences to favor Mr. Billinger at this pleading stage, therefore, he has adequately alleged that Det. Min concealed Tyrone Rice's pending charges from prosecutors.[14] Viewed together with Det. Min's alleged fabrication of evidence related

---

[13] Plaintiff has sufficiently alleged that Det. Men knew of Tyrone Rice's pending burglary charge and failed to disclose it to prosecutors. (ECF No. 1 ¶¶ 54, 61.) When considered together with the alleged fabrication of evidence, such failure to disclose is sufficient at this stage to allege a § 1983 claim against Det. Min based on a *Brady* violation.

[14] Mr. Billinger also alleges that Det. Min improperly concealed his IAD file from the prosecution. Generally, such files are presumed to be in the constructive possession of the prosecutor. *See Horton v. United States*, 983 F. Supp. 650, 654 (E.D. Va. 1997) ("Moreover, the government's duty to disclose this evidence encompasses not only material that is in the possession of the prosecutor, but also material that is 'known to others acting on the government's behalf in the case, including the police.'" (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995))). The Court need not reach this issue at this stage, however, because Mr. Billinger has adequately alleged a *Brady* violation in Count III at least on the basis that Det. Min concealed Tyrone Rice's charges.

to the identification of Mr. Jones, such concealment is sufficient to allege bad faith.  *See Thomas*, 2025 WL 81950, at *8; *Burgess*, 2017 WL 4947004, at *13.

Finally, Mr. Billinger has also adequately alleged prejudice.  "Prejudice ensues if 'there is a reasonable probability' that the jury would have reached a different result had the evidence been properly disclosed.'"  *Owens*, 767 F.3d at 397 (quoting *Bagley*, 473 U.S. at 682).  In other words, "the question is whether, in the absence of disclosure, the defendant 'received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'"  *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).  Importantly, a plaintiff need not show that a different result would have been probable: "it is enough that the suppression of evidence cast serious doubt on the proceedings' integrity."  *Id.* at 398 (citing *Strickler v. Greene*, 527 U.S. 263, 289–90 (1999)).  In this case, Mr. Billinger has sufficiently alleged nondisclosure that "cast serious doubt" on the integrity of the trial that led to his conviction.  *Id.*  Specifically, he has alleged concealment and nondisclosures that tend to impeach the testimony of two prosecution witnesses, Det. Min and Tyrone Rice.  (ECF No. 1 ¶¶ 54, 57, 61, 11, 70, 105, 107.)  Construing all facts and drawing all inferences to favor Mr. Billinger, such allegations are sufficient to state a § 1983 claim in Count III.

### B.  Qualified Immunity as to Federal Claims

Alternatively, Det. Min argues that even if the § 1983 claims against him in Counts I, II, and III[15] are adequately alleged, he is entitled to qualified immunity as to those claims. (ECF No. 11-1 at 21–30.)  "Qualified immunity 'shields officials from civil liability [under § 1983] so long as their conduct does not violate clearly established statutory or constitutional

---

[15]  As noted above, Plaintiff concedes that the § 1983 claim against Det. Min in Count IV must be dismissed.

rights of which a reasonable person would have known.'" *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (internal quotations omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "At the motion to dismiss stage, Defendants carry the burden of demonstrating qualified immunity, *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007), and their entitlement to it must appear 'on the face of the complaint' to warrant dismissal on such grounds, *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011)." *Hammock v. Watts*, 146 F.4th 349, 364 (4th Cir. 2025). "An officer is entitled to qualified immunity unless he (1) 'violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time.'" *Hulbert v. Pope*, 70 F.4th 726, 732 (4th Cir. 2023) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). Federal courts in their discretion may conduct this two-step analysis in the order of their choosing. *Balogh v. Virginia*, 120 F.4th 127, 134 (4th Cir. 2024).

In this case, Det. Min asserts that he is entitled to qualified immunity as to Counts I, II, and III because Plaintiff has shown neither a violation of any constitutional right nor that the asserted rights were clearly established at the time of his alleged conduct.[16] The Court addresses each element as to each claim in turn. As explained below, Det. Min has not shown that his entitlement to qualified immunity is clear on the face of the Complaint. At this stage, therefore, the claims against him in Counts I, II, and III shall proceed.

---

[16] Det. Min argues that Plaintiff carries the burden to overcome both elements of qualified immunity, (ECF No. 11-1 at 23–24), but this argument improperly places the burden on Plaintiff at the pleading stage. It is true that a Plaintiff *ultimately* "must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." *Adams*, 884 F.3d at 226. At the pleading stage, however, the defendant bears the burden to prove that, on the face of the complaint, he is entitled to qualified immunity. *Hammock*, 146 F.4th at 364.

i.    **The face of the Complaint does not clearly show whether the rights at issue were clearly established at the time**

Whether a constitutional right is clearly established is a "purely legal" inquiry, *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005), and the defendant asserting qualified immunity bears the burden to establish that a right was *not* clearly established, *Rambert v. City of Greenville*, 107 F.4th 388, 398 (4th Cir. 2024). At the motion to dismiss stage, therefore, a defendant must establish that, on the face of the Complaint, the rights at issue were *not* clearly established. *See Hammock*, 146 F.4th at 364.[17] As explained below, Det. Min has not made such a showing in this case.

As to the malicious prosecution claim under § 1983 in Count I, Det. Min argues that the right at issue was his entitlement to rely on Tyrone Rice's statement when filing the Statement of Charges against Mr. Billinger. (ECF No. 11-1 at 23.) "Unquestionably, '[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'" *Miller v. Prince George's Cnty*, 475 F.3d 621, 627 (4th Cir. 2007) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). "Thus, there is 'a clearly established Fourth Amendment right to be arrested only upon probable cause . . . .'" *Queen v. Prince George's Cnty.*, 188 F. Supp. 3d 535, 542 (D. Md. 2016) (quoting *Peters v. City of Mt. Rainier*, Civ. No. GJH-14-955, 2016 WL 1239921, at *4 (D. Md. Mar. 24, 2016)). As the Fourth Circuit has explained, however, courts should not frame the inquiry so broadly and instead must consider "the right to be free from

---

[17] Both parties cite to cases addressing qualified immunity at the summary judgment stage, when the burden is on the Plaintiff to overcome qualified immunity. *See, e.g.*, (ECF No. 21 at 12–17; ECF No. 16-1 at 13–18). For this reason, to the extent the parties dispute whether this case is analogous to various cases decided at the summary judgment stage, such arguments are premature.

arrest under the particular circumstances of the case." *Graham v. Gagnon*, 831 F.3d 176, 182 (4th Cir. 2016). Put differently, the right at issue in Count I is not whether Det. Min appropriately relied on Tyrone Rice's statement, but rather whether there existed probable cause to arrest Mr. Billinger based on the facts of the investigation.

At this stage, for the reasons discussed above as to Count I, Mr. Billinger has alleged facts sufficient to allege that probable cause did not exist for his arrest. Specifically, he has alleged that Det. Min omitted from the Statement of Charges information material to the existence of probable cause for Mr. Billinger's arrest. The statement of probable cause cited only that a witness present at the murder "positively identified" Mr. Billinger via a "photographic array" as the person responsible for the victims' deaths. (ECF No. 16-2 at 2–3.) Although Det. Min disputes whether any omission was intentional, such disputes are not appropriate for determination at the pleading stage. *See Hammock*, 146 F.4th at 364 (declining to address knowledge dispute at pleading stage). At this early stage, Det. Min has failed to demonstrate that, on the face of the Complaint, the rights at issue in Count I were not clearly established.

As to the § 1983 claim for violation of due process based on fabrication of evidence in Count II, Det. Min does not appear to dispute that the "constitutional right[] not to be imprisoned and convicted based on . . . fabricated evidence or confessions . . . [was] clearly established" at the time of the events underlying this case. *Gilliam v. Sealey*, 932 F.3d 216, 241 (4th Cir. 2019). At this pleading stage, Det. Min has not shown that the face of the Complaint demonstrates that the rights at issue—including the right to be free of "a conviction obtained through the use of false evidence"—were *not* clearly established at the time of Mr. Billinger's

investigation, arrest, trial, and conviction in 2017. *Id.*; *see also Washington v. Wilmore*, 407 F.3d 274, 283 (4th Cir. 2005) ("[The] constitutional right not to be deprived of liberty as a result of the fabrication of evidence by an investigating officer . . . was clearly established in 1983.").

Finally, as to Count III, Det. Min has not demonstrated that, on the face of the Complaint, Plaintiff had no clearly established right to be free from prosecution in which officers suppress exculpatory evidence in bad faith. As the Fourth Circuit has explained, "precedent unmistakably provides that, by 1988, a police officer violates clearly established constitutional law when he suppresses material exculpatory evidence in bad faith." *Owens.*, 767 F.3d at 401. Moreover, the Fourth Circuit has explained that "[w]hether or not an officer's knowledge is 'imputed' to the prosecutor does not affect the lawfulness of the officer's own conduct." *Id.* at 400 (citing *Limone v. Condon*, 372 F.3d 39, 47 (1st Cir. 2004)). For the reasons discussed above, Mr. Billinger has sufficiently alleged that Det. Min improperly and in bad faith failed to disclose material evidence in a manner that prejudiced him. Although Det. Min argues that Plaintiff has not adequately alleged bad faith, as explained above, courts may infer bad faith from officers' fabrication of evidence and failure to disclose exculpatory evidence. *McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 282 (D. Md. 2020). Thus, for the purposes of demonstrating the affirmative defense of qualified immunity at the pleading stage, Det. Min has failed to meet his burden to demonstrate entitlement to qualified immunity on the basis that no clearly established right was at issue as to the allegations in Count III.

### ii. The allegations of the Complaint sufficiently allege a violation of Mr. Billinger's constitutional rights

Relatedly, for all the reasons discussed above, Mr. Billinger has alleged facts sufficient to state § 1983 claims for malicious prosecution, violation of due process based on fabrication

of evidence, and violation of due process based on failure to investigate and disclose exculpatory evidence. As the Fourth Circuit has explained, "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens*, 767 F.3d at 396 (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). Specifically, "dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is *plausible* on its face." *Id.* (citing *Iqbal*, 556 U.S. at 678).

At this pleading stage, Mr. Billinger's allegations are sufficient to preclude application of qualified immunity, which requires the defendant to demonstrate that his entitlement to such immunity is clear from the face of the Complaint. *Hammock*, 146 F.4th at 364. Specifically, as to Count I, for the reasons provided above, Plaintiff has alleged fact sufficient to state a claim that Det. Min deliberately omitted material information from the Statement of Probable Cause. As to Count II, as explained above, Mr. Billinger has sufficiently alleged that Det. Min falsified the existence of a photograph and testified falsely based on that alleged falsification. Finally, as detailed above as to Count III, Mr. Billinger has adequately alleged that Det. Min deliberately concealed Tyrone Rice's criminal history from the prosecution in a manner sufficient to support an inference of bad faith. At this early stage, therefore, Det. Min has not shown that it is clear on the face of the Complaint that he is entitled to qualified immunity.[18] *Id.* Det. Min's Motion to Dismiss (ECF No. 11) is DENIED as to the § 1983 claims against him in Counts I, II, and III.

---

[18] Although Det. Min has not met his burden to demonstrate entitlement to qualified immunity at this pleading stage, he is entitled to assert qualified immunity again throughout this litigation. *See, e.g.*, *Heath v. Coll. of Charleston*, 2018 WL 3353063, at *4, 7 (D.S.C. June 15, 2018) (discussing evaluation of qualified immunity at

### C.  State-Law Claims against Det. Min

Mr. Billinger alleges four state-law claims against Det. Min: (1) a Maryland common law claim for malicious prosecution in Count VI; (2) a Maryland common law claim of intentional infliction of emotional distress in Count VII; (3) a Maryland common law claim for abuse of process in Count VIII; and (4) a Maryland constitutional claim for violation of Article 24 of the Maryland Declaration of Rights in Count IX.  (ECF No. 1 ¶¶ 126–145.)  Det. Min argues that each of these claims must be dismissed for failure to state a claim under Rule 12(b)(6).  The Court addresses each claim in turn.

### i.      Count VI: Malicious Prosecution

"Under Maryland law, '[t]he elements of malicious prosecution are: (1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceedings in favor of the plaintiff." *Nalls v. Balt. Cnty.*, Civ. No. ELH-23-0183, 2024 WL 1140688, at *34 (D. Md. Mar. 15, 2024) (quoting *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000)).  A police officer who files a statement of charges has initiated a criminal proceeding for the purposes of a malicious prosecution claim.  *See Brooks v. McKimmie*, Civ. No. DLB-23-0208, 2025 WL 1018882, at *8 (D. Md. Apr. 4, 2025).  In this case, Mr. Billinger has alleged facts sufficient to state a claim of malicious prosecution in Count VI.

As an initial matter, Plaintiff has adequately alleged that Det. Min initiated criminal proceedings against him by swearing out the Statement of Probable Cause.  *See Brooks*, 2025

---

different stages of litigation); *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) (explaining that pre-trial establishment of qualified immunity is favored).

WL 1018882, at *8.  Moreover, "the definition of probable cause for a malicious prosecution claim under Maryland law is the same as for a Fourth Amendment claim."  *Annappareddy v. Lating*, Civ. No. JFA-18-3012, 2023 WL 2540306, at *12 (D. Md. Mar. 16, 2023) (citing *DiPino v. Davis*, 729 A.2d 354, 351, 361, 366–68 (Md. 1999)).  Thus, for the same reasons Plaintiff has alleged facts sufficient to allege arrest without probable cause as to his malicious prosecution claim under § 1983 in Count I, he also has alleged arrest without probable cause as to his malicious prosecution claim under Maryland law in Count VI.  Finally, as noted above, Plaintiff has alleged that the criminal proceedings terminated in his favor by alleging that his original conviction was vacated and the State of Maryland entered a *nolle prosequi* as to the original charges against him.  The parties' dispute in this case, therefore, hinges on whether Plaintiff has adequately alleged that Det. Min acted with the requisite malice or improper motive as required to state the third element of the tort of malicious prosecution under Maryland law.

As this Court has explained, "[m]alice is defined as 'conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'"  *Middleton v. Koushall*, Civ. No. ELH-20-3536, 2024 WL 1967816, at *40 (D. Md. May 3, 2024) (internal quotations marks omitted) (quoting *Lewis v. Caraballo*, 98 F.4th 521, 537 (4th Cir. 2024)).  This inquiry is "'subjective,' and thus is 'generally a question for the jury.'"  *Id.* (quoting *Lewis*, 98 F.4th at 537).  Additionally, malice may be "inferred from acts and circumstantial evidence" including "from a lack of probable cause."[19]  *Id.* (first quoting *E.W. ex rel. T.W. v.*

---

[19]  Det. Min argues that malice cannot be inferred from lack of probable cause in this case because "there are no nonconclusory allegations challenging the veracity of the warrant application from Mr. Billinger's arrest." (ECF No. 11-1 at 26–27.)  The gravamen of Plaintiff's claims in Counts I and VI, however, is that Det. Min deliberately omitted material information from the warrant application.  Such allegations of deliberate omission of information tending to mitigate the existence of probable cause is sufficient at this pleading stage to support an inference of malice. *See Thacker v. City of Hyattsville*, 762 A.2d 172, 193 (Md. Ct. Spec. App. 2000) (discussing

*Dolgos*, 884 F.3d 172, 187 (4th Cir. 2018); and then quoting *Okwa v. Harper*, 757 A.2d 118, 133 (Md. 2000)).  At this early stage of litigation in which Mr. Billinger has alleged facts sufficient to allege a lack of probable cause for his arrest, therefore, he has sufficiently alleged malice for the purposes of his malicious prosecution claim in Count VI.  Accordingly, Det. Min's Motion is DENIED as to Count VI.

### ii.      Count VII: Intentional infliction of emotional distress

"To prevail on a claim for intentional infliction of emotional distress, Plaintiff must prove that: (1) the Defendant Officers' conduct was intentional or reckless; (2) the Defendant Officers' conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and Plaintiff's emotional distress; and (4) the conduct caused emotional distress of a severe nature." *Neithardt v. Garvey*, Civ. No. LKG-22-0815, 2023 WL 5671606, at *9 (D. Md. Sep. 1, 2023) (citing *Takacs v. Fiore*, 473 F. Supp. 2d 647, 651–52 (D. Md. 2007)). "Each element must be pled with specificity," *Tavakoli-Nouri v. Maryland*, 779 A.2d 992, 999 (Md. Ct. Spec. App. 2001), and claims for intentional infliction of emotional distress "are 'rarely viable in a case brought under Maryland law,'" *Takacs*, 473 F. Supp. 2d at 652 (quoting *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001)).  Rather, as Judge Gallagher of this Court has explained, "[l]iability accrues only 'for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *McPherson*, 494 F. Supp. 3d at 286 (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992)).  In this case, Det. Min

---

facts that may give rise to an inference of malice, including officer's personal history); *DiPino*, 729 A.2d at 374 (explaining malice can be inferred and courts must consider whether officer "commenced a criminal prosecution against [the plaintiff] for a motive or purpose other than to bring him to justice").

asserts that this claim must be dismissed because Plaintiff has not sufficiently alleged that he lacked probable cause for arrest, and thus his conduct cannot have been extreme and outrageous. (ECF No. 11-1 at 27–29.) He also argues that Plaintiff has not pled with specificity any allegations that Det. Min engaged in intentional or reckless conduct. (*Id.*) For the reasons discussed above, Plaintiff has sufficiently alleged a lack of probable cause. Moreover, construing all facts and drawing all inferences in the light most favorable to Mr. Billinger, he has alleged the remaining elements of intentional infliction of emotional distress.

As explained above, Plaintiff has sufficiently alleged that Det. Min engaged in reckless or intentional conduct by alleging that he fabricated evidence, omitted material information from the Statement of Probable Cause, and testified falsely at Plaintiff's trial. Similarly, Mr. Billinger has sufficiently alleged that Det. Min's conduct was extreme and outrageous. An officer's alleged knowing, deliberate, or reckless use of his authority to arrest an individual for homicide without probable cause is the sort of alleged abuse of power that this Court has deemed extreme and outrageous at the pleading stage. *See, e.g.*, *McPherson*, 494 F. Supp. 3d at 286. This Court has repeatedly recognized that a police officer's position of authority "enhances the alleged extreme and outrageous character of [his] conduct, which 'may arise from [his] abuse of a position . . . .'" *Id.* (quoting *Harris v. Jones*, 380 A.2d 611, 615–16 (Md. Ct. Spec. App. 1977)); *accord Chestnut v. Kincaid*, Civ. No. RDB-20-2342, 2021 WL 1662469, at *13 (D. Md. Apr. 28, 2021). Det. Min's alleged use of "[his] authority as [an] officer[] to falsify evidence of [a plaintiff's] participation in a homicide, resulting in . . . wrongful imprisonment and the attendant emotional distress" is sufficient to allege extreme and outrageous conduct. *McPherson*, 494 F. Supp. 3d at 286.

Finally, Mr. Billinger has specifically alleged severe emotional distress based on his alleged wrongful imprisonment. "In order for distress to be sufficiently severe to state a claim for intentional infliction of emotional distress, 'the plaintiff [must] show that he suffered a *severely* disabling emotional response to the defendant's conduct,' and that the distress was so severe that 'no reasonable man could be expected to endure it.'" *Tavakoli-Nouri*, 779 A.2d at 999 (quoting *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000)). Mr. Billinger has alleged that, due to Det. Min's conduct, he "experienced the worst depression he has ever known, came under the care of a psychiatrist, and received a diagnosis of Post Traumatic Stress Disorder." (ECF No. 1 ¶ 91.) Additionally, he specifically alleges that he suffered emotional distress from incarceration and from being unable to spend time with his family and raise his children. (*Id.* ¶¶ 92, 93.) Accordingly, Mr. Billinger has adequately alleged intentional infliction of emotional distress and, at this pleading stage, Det. Min's Motion (ECF No. 11) is DENIED as to Count VII.

### iii.    Count VIII: Abuse of Process

Unlike the tort of malicious prosecution, "[a]buse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff . . . ." *Traore v. Balt. Police Dep't*, Civ. No. MJM-22-793, 2023 WL 8600553, at *28 (D. Md. Dec. 12, 2023) (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997)). "To sustain a cause of action for abuse of process, the plaintiff must prove: [1] that the defendant willfully used process after it has issued in a manner not contemplated by law; [2] that the defendant acted to satisfy an ulterior

motive; . . . [3] that damages resulted from the defendant's perverted use of process;" and [4] that "an unlawful arrest or seizure of property [occurred] to support the damages element of" the claim. *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 593 (D. Md. 2023). Importantly, "the 'mere issuance of process itself . . . is not actionable, even if it is done with 'ulterior motive' or 'bad intention.'" *Id.* (quoting *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (2004) (Md. Ct. Spec. App. 2004)).

Rather, abuse of process requires "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ." *Wood v. Palmer Ford, Inc.*, 425 A.2d 671, 680 (Md. Ct. Spec. App. 1981) (quoting Prosser, Law of Torts 857 (4th ed. 1971)). Specifically,

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of process itself, which constitutes the tort.

*Id.* (quoting Prosser, Law of Torts 857 (4th ed. 1971)). In this case, Mr. Billinger has not alleged any facts that would show that Det. Min attempted to use his arrest, prosecution, or conviction to extort Mr. Billinger in some way. Rather, he alleges that Det. Min acted with malicious or reckless intent by fabricating evidence and testimony to arrest Mr. Billinger and increase the likelihood of his conviction. *See, e.g.* (ECF No. 1 ¶¶ 137–141, 11–18, 52–59). Although Mr. Billinger alleges that Det. Min acted with "'ulterior motive' or 'bad intention,'" *Lilly*, 694 F. Supp. 3d at 593 (quoting *Campbell*, 852 A.2d at 1044), such motive or intent is not sufficient to allege abuse of process under Maryland law. Accordingly, Det. Min's Motion (ECF No. 11) is GRANTED as to the abuse of process claim in Count VIII.

34

>        iv.    **Count IX: Violation of Maryland Declaration of Rights, Article 24 of the Maryland Constitution**

Under Article 24 of the Maryland Declaration of Rights, no person "ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." "Much like the Fourteenth Amendment, Article 24 protects an individual's procedural due process interest" such that "Maryland 'courts have long equated the Due Process Clause and Article 24.'" *Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 507 (D. Md. 2014) (quoting *Samuels v. Tschechtelin*, 763 A.2d 209, 230 (Md. Ct. Spec. App. 2000)). Put differently, "Article 24 . . . is *in pari materia* with the Due Process Clause of the Fourteenth Amendment." *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009). Thus, for the same reasons explained above as to the substantive due process violations alleged in Counts II and III, Mr. Billinger has alleged facts sufficient to state a claim under Article 24 of the Maryland Declaration of Rights. Det. Min's Motion (ECF No. 11) is DENIED as to Count IX.

>    **II.    Defendant BPD's Motion to Dismiss (ECF No. 10)**

Mr. Billinger alleges two claims against Defendant Baltimore Police Department ("BPD"): (1) a *Monell* claim under 42 U.S.C. § 1983 (Count V); and (2) a claim for indemnification (Count X). BPD first argues that the *Monell* claim must be dismissed because Mr. Billinger has not adequately alleged that Det. Min committed any underlying constitutional violation. (ECF No. 10-1 at 7.) Alternatively, it contends that Mr. Billinger has failed to allege that BPD engaged in any policy or custom sufficient to give rise to *Monell* liability. (*Id.* at 8–15.) Finally, BPD contends that Mr. Billinger's indemnification claim in Count X should be

35

dismissed as unripe for review because it depends on a future judgment against Det. Min. (*Id.* at 15–17.) Alternatively, BPD asserts that the indemnification claim against it in Count X should be stayed pending decision of Det. Min's liability such that this case is bifurcated. (*Id.* at 17–18.) As an initial matter, for the reasons discussed above, Mr. Billinger has sufficiently alleged that Det. Min committed constitutional violations. Accordingly, this Court addresses each of the claims against BPD in turn, and, as to the *Monell* claim in Count V, addresses only BPD's alternative argument as to lack of a pattern or practice.

### A. Count V: *Monell* Claim

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the U.S. Supreme Court determined that local governmental bodies may be liable under Section 1983 based on the unconstitutional conduct of individual defendants if those defendants were executing an official policy or custom of the local government when they violated a plaintiff's rights. *Id.* at 690. To plead a claim for *Monell* liability, a plaintiff must allege that "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson v. Balt. Police Dep't*, Civ. No. ELH-19-0698, 2020 WL 1169739, at *30 (D. Md. Mar. 10, 2020) (collecting cases). As Judge Rubin of this Court has explained, "all *Monell* claims have three essential elements: (1) identification of a specific 'policy' or 'custom'; (2) attribution of the policy, and fault for its creation, to the municipality; and (3) an 'affirmative link' between an identified policy or custom and a specific rights violation." *Rose v. Baltimore Cnty.*, Civ. No. JRR-23-2078, 2024 WL 3924595, at *12 (D. Md. Aug. 23, 2024) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987)). "Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by

definition, easier." *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 403 (4th Cir. 2014). Thus, "*Monell* claims survive the motion to dismiss stage if the plaintiff alleges facts to support that the defendant 'was aware of ongoing constitutional violations' and 'did nothing to stop or correct those actions.'" *Rose*, 2024 WL 3924595, at *12 (citation omitted). In this case, Mr. Billinger has alleged facts sufficient to state a *Monell* claim against BPD under a theory of failure to train.

A plaintiff proceeding under *Monell* may allege the existence of a policy or custom in a variety of ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). In this case, Mr. Billinger alleges that BPD engaged in widespread policies and practices, of which its policymakers and supervisors had actual knowledge, of (1) "regularly failing to disclose exculpatory and impeachment evidence to the defense, prosecutors, and in applications for warrants; fabricating evidence; improperly interrogating witnesses, including minors; and in bad faith failing to conduct investigations in order to shield earlier wrongful acts;" (ECF No. 1 ¶ 119); and (2) failing to supervise, discipline, and "adequately train police officers in the homicide unit on their obligations regarding" investigations and evidence, (*id.* ¶ 120). *See* (*id.* ¶¶ 118–122.) He further alleges that Det. Min's alleged unconstitutional conduct, including fabrication of evidence and omission of material information from the Statement of Probable Cause, reflects these BPD patterns and practices. (*Id.* ¶ 122.) Thus, Mr. Billinger

appears to invoke the latter two theories of *Monell* liability,[20] and the Court addresses each in turn.

### i.        Failure to Train

As Judge Rubin of this Court has concisely explained, "[a] municipality can . . . be liable for an established policy through a failure to train, if it reflects a deliberate or conscious choice to not do so." *Rose*, 2024 WL 3924595, at *16 (quoting *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 309 (D. Md. 2020)); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). A failure to train may be express, tacit, or based on a failure to "adequately 'prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.'" *Id.* (quoting *Johnson*, 452 F. Supp. 3d at 309). To allege failure to train liability, a plaintiff must allege "that (1) the nature of the training was insufficient in some particularized manner; (2) the insufficiency of the training was a deliberate or conscious choice; and (3) a causal relationship existed between the failure-to-train and the injuries suffered." *Id.* (quoting *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 298 (D. Md. 2022)).

First, a plaintiff must identify "a specific deficiency rather than general laxness or ineffectiveness in training . . . ." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987); *accord Paylor v. Balt. Police Dep't*, Civ. No. JRR-24-2746, 2025 WL 2306236, at *10 (D. Md. Aug. 11, 2025); *Palma*, 598 F. Supp. 3d at 298. "Conclusory or broad-sweeping allegations of deficient

---

[20] Although BPD addresses all four theories of liability, the Complaint does not contain allegations of an express policy or a creation of an unconstitutional policy by a final decisionmaker. (ECF No. 1 ¶¶ 117–125, 32–34 (discussing failure to train and inadequate supervision and accountability systems).) Moreover, in Plaintiff's Opposition to dismissal, he characterizes his *Monell* claim as raising failure to address systematic misconduct and condonation of misconduct. (ECF No. 17-1 at 6–8.) For this reason, this Court addresses only failure to train and condonation theories, which appear to be the only theories of liability alleged in Mr. Billinger's Complaint.

officer training that was a deliberate or conscious choice by the municipality and which resulted in unconstitutional officer conduct are insufficient to state a claim." *Paylor*, 2025 WL 2306236, at *10 (collecting cases). "Stating, 'in broad, conclusory terms and in a variety of different ways that [an entity] failed to train and supervise its officers' will not suffice." *Brown v. Maryland*, Civ. No. SAG-25-1331, 2025 WL 2855770, at *4 (D. Md. Oct. 8, 2025) (quoting *Peters v. City of Mt. Ranier*, Civ. No. GJH-14-955, 2014 WL 4855032, at *5 (D. Md. Sep. 29, 2014)). Finally, "the municipality will only be liable if 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been *deliberately indifferent* to the need.'" *Johnson*, 452 F. Supp. 3d at 309 (quoting *Harris*, 489 U.S. at 390).

To sufficiently allege a specific deficiency in training, a plaintiff typically must both identify a specific deficiency in the training program *and* allege "specific examples . . . demonstrating the results of that failure to train." *Shipley v. Disney*, Civ. No. SAG-21-3173, 2022 WL 2789076, at *10 (D. Md. July 15, 2022). This Court has repeatedly recognized that a plaintiff sufficiently identifies specific deficiencies in training by identifying areas of training that are inadequate, such as "training on officers' duty to disclose exculpatory evidence pursuant to *Brady*," *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 533 (D. Md. 2020), or deficient training as to "use of force; de-escalation; stops, searches, and arrests; and how to supervise and investigate misconduct," *Jones v. Jordan*, Civ. No. GLR 16-2662, 2017 WL 4122795, at *6 (D. Md. Sep. 18, 2017). Absent additional allegations of specific instances resulting from such failure to train, however, this Court has consistently determined that identification of specific areas alone is insufficient to allege failure to train liability. *See Shipley*,

2022 WL 2789076, at *10 (collecting cases); *Washington*, 457 F. Supp. 3d at 533–34 (collecting cases); *Johnson v. Balt. Police Dep't*, Civ. No. ELH-19-0698, 2020 WL 1169739, at *32–34 (D. Md. Mar. 10, 2020) (comparing cases that adequately alleged failure to train liability and those that did not).  Notably, this Court has recognized that a plaintiff alleging *Monell* claims based on failure to train may incorporate into his complaint factual allegations from the 2016 DOJ Report regarding BPD policing practices.  *Jones*, 2017 WL 4122795, at *5–7.

In this case, Mr. Billinger has sufficiently identified deficient areas of training and alleged specific examples of the results of such deficient training.  He alleges that BPD officers received inadequate "training on their obligations regarding the disclosure of evidence, interactions with witnesses, and the conduct of investigations in homicide cases (including the need to follow leads that contradicted detectives' prevailing theory of the case)."  (ECF No. 1 ¶¶ 72, 120.)    Such identification of specific areas of deficient training is sufficient, at this pleading stage, to satisfy the requirement to identify specific deficiencies.  *See, e.g.*, *Jones*, 2017 WL 4122795, at *5–7; *Johnson*, 2020 WL 1169739, at *33 (failure to train sufficiently alleged where plaintiff identified "failure to train officers on the obligation to disclose exculpatory information as required by *Brady* and failing to supervise and discipline officers for fabricating evidence").

Similarly, construing all facts and drawing all inferences to favor the plaintiff, Mr. Billinger has sufficiently alleged specific instances of misconduct arising from the alleged failure to train.  This Court has consistently emphasized that a plaintiff alleging failure to train cannot rest solely upon the alleged constitutional violation in their case but must allege instances of broader constitutional violations resulting from the training.  *See, e.g.*, *Hall v.*

*Fabrizio*, Civ. No. JKB-12-0754, 2012 WL 2905293, at \*2 (D. Md. July 13, 2012) (dismissing failure to train claim because plaintiff failed to "allege a single instance of these alleged violations other than Plaintiff's own experience, and thus falls well short of showing the sort of 'widespread and permanent' practice that is required to show a municipal custom"); *Johnson*, 2020 WL 1169739, at \*32–34 (concluding that cases that allege specific instances of constitutional violation survive dismissal); *Washington*, 457 F. Supp. 3d at 533 (declining to dismiss failure to train claim where plaintiff "has supplemented this allegation [of insufficient *Brady* training] with specific examples, both before and after his wrongful conviction, demonstrating the results of that failure to train"). The Fourth Circuit has emphasized that a plaintiff meets this burden by alleging "brief, but non-conclusory, allegations" of misconduct. *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (citing *Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011)).

In this case, Mr. Billinger alleges as an example of inadequate training Det. Min's alleged misconduct in his case, Det. Min's alleged prior misconduct, and the existence of the "do not call list," which related to the perception of integrity issues with multiple officers. (ECF No. 1 ¶¶ 14, 83, 34, 73–80.) Taken together, and construing all facts and inferences to favor Mr. Billinger, these non-conclusory allegations of multiple incidents of misconduct by Det. Min and a "Do Not Call List" "of law enforcement officers with credibility issues due to misconduct," (*id.* ¶ 14), are sufficient to allege a pattern or practice of failure to train. At this pleading stage, the Court must construe all facts and draw all reasonable inferences to favor Mr. Billinger. As the Fourth Circuit has put it, '[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403.

41

Finally, Mr. Billinger has sufficiently alleged that BPD was deliberately indifferent to the need for further training. "In the context of failure to train, deliberate indifference can be shown through policymakers' choice to retain a training program, despite 'actual or constructive notice' that an omission in the program causes officers 'to violate citizens' constitutional rights.'" *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 534 (D. Md. 2020) (quoting *Jones*, 2017 WL 4122795, at *7); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011). In this case, Mr. Billinger has alleged that BPD was aware of these specific deficiencies in its training at least upon the issuance of the DOJ Report nearly a year before he was arrested, but it failed to correct those deficiencies prior to his arrest. *See Jones*, 2017 WL 4122795, at *7–8 (concluding awareness or knowledge of problem prior to plaintiff's alleged harm is sufficient to allege deliberate indifference or conscious choice as to *Monell* claim). Moreover, he has alleged that BPD knew of Det. Min's prior misconduct—including misconduct that resulted in a recommendation of termination—but retained Det. Min as an officer for another twenty years despite such recommendation. (ECF No. 1 ¶¶ 76–79.) Construing all facts and drawing all inferences to favor Plaintiff, such allegations are sufficient to allege a *Monell* claim for failure to train that is plausible at this pleading stage. *See Owens*, 767 F.3d at 403; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Accordingly, BPD's Motion to Dismiss is denied as to the *Monell* claim in Count V to the extent that claim rests on a theory of failure to train.

### ii.   Condonation of Persistent and Widespread Practice

Nevertheless, Mr. Billinger has failed to sufficiently allege *Monell* liability based on BPD's condonation of a "persistent and widespread practice" of "condoning improper, illegal, and unconstitutional investigative actions" such as "fabricating inculpatory evidence [and]

withholding exculpatory and impeachment evidence from prosecutors." (ECF No. 1 ¶¶ 68, 69, 122.) Under the "condonation" theory, a municipality violates § 1983 if "municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.' *Owens*, 767 F.3d at 402 (quoting *Spell*, 824 F.2d at 1389–90). "A municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell*, 436 U.S. at 691). At the pleading stage, a plaintiff need not include specific details regarding alleged prior misconduct. *Owens*, 767 F.3d at 403–404 (holding *Monell* claim based on condonation theory sufficiently alleged due to "assertions as to 'reported and unreported cases' and numerous 'successful motions'" related to unconstitutional policy). Even so, "[a] municipality is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees . . . Rather, *there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice*.'" *Smith v. Ray*, 409 F. App'x 641, 650 (4th Cir. 2011) (emphasis added) (quoting *Lytle*, 326 F.3d at 473). This Court has repeatedly dismissed *Monell* claims based on condonation theory where the plaintiff failed to allege numerous, specific instances of unconstitutional conduct. *Compare Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 590 (D. Md. 2023) (dismissing claim where plaintiff alleged three examples of unconstitutional conduct from 2016 DOJ Report) *with Corbitt v. Balt. City Police Dep't*, Civ. No. RDB-20-3431, 2022 WL 846209, at *9 (D. Md. Mar. 22, 2022) (denying dismissal where plaintiff "cite[d] six prior lawsuits and describe[d] five specific instances" of unconstitutional use of force).

In this case, Mr. Billinger has not alleged any other instances of failure to disclose exculpatory evidence, fabrication of evidence, or improper investigation among officers in the

homicide unit.  Although he references the DOJ Report's conclusions of a pattern or practice of unconstitutional stops, searches and arrests; use of excessive force; retaliation; and disparities in enforcement strategies depending on an individual's race, among other practices, (ECF No. 1 ¶¶ 29–34), he fails to offer any specific examples of the alleged pattern or practice of unconstitutional investigatory practices other than Det. Min's conduct in his criminal case, (*id.* ¶¶ 66–73).  A plaintiff need not describe other alleged instances within an unconstitutional pattern or practice in detail, but he must at least allege facts beyond mere conclusory allegations of a pattern or practice.  *See Owens*, 767 F.3d at 403 (holding reference to "numerous reported and unreported cases" and "numerous successful motions" sufficient to support pattern or practice); *Corbitt*, 2022 WL 846209, at *9 (holding reference to prior cases against BPD and to DOJ Report's findings sufficient to state *Monell* claim based on condonation); *Jones*, 2017 WL 4122795, at *9–10 (holding reference to specific factual examples from 2016 DOJ Report sufficient to allege *Monell* claim based on condonation).  In this case, Mr. Billinger has offered only a conclusory allegation of a "pattern or practice" of unconstitutional conduct without sufficient factual support beyond Det. Min's alleged misconduct.  Accordingly, his *Monell* claim against BPD in Count V must be dismissed to the extent it is based on a theory of condonation of a policy of unconstitutional investigatory practices.

### B.  Count X: Indemnification

The final count of the Plaintiffs' Complaint alleges that BPD should be ordered to indemnify Det. Min for any judgment entered against him in this matter. Under Maryland law, the Local Government Tort Claims Act provides that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions

44

committed by the employee within the scope of employment with the local government." MD. CODE ANN., CTS. & JUD. PROC. § 5-303(b)(1). The Act specifically notes that the BPD is such a "local government," *id.* § 5-301(d)(21), and provides that a local government cannot assert sovereign immunity as a defense against claims for indemnification, *id.* § 5-303(b)(2).

Although BPD argues that this indemnification claim should be dismissed as unripe, (ECF No. 10-1 at 15–17), this Court has repeatedly declined dismissal for lack of ripeness in similar cases. *See, e.g.*, *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 543 (D. Md. 2020); *McPherson*, 494 F. Supp. 3d at 288. Mr. Billinger has alleged numerous § 1983 claims against Det. Min and a *Monell* claim against BPD that will survive dismissal. "[T]o facilitate an efficient resolution of this case, and to avoid 'the possibility of redundant litigation,' the Court concludes that dismissal of Plaintiffs' indemnification claim would be improper at this time." *McPherson*, 494 F. Supp. 3d at 288 (quoting *Bumgardner v. Taylor*, Civ. No. GLR-18-1438, 2019 WL 4115414, at *11 (D. Md. Aug. 29, 2019)); *accord Brown v. Maryland*, Civ. No. SAG-25-1331, 2025 WL 2855770, at *7–8 (D. Md. Oct. 8, 2025) (citing *Johnson v. Balt. Police Dep't*, Civ. No. ELH-19-0698, 2020 WL 1169739 (D. Md. Mar. 10, 2020)); *Chestnut v. Kincaid*, Civ. No. RDB-20-2342, 2021 WL 1662469, at *16 (D. Md. Apr. 28, 2021); *Washington*, 457 F. Supp. 3d at 543. *But see Simmons v. Balt. City Police Dep't*, Civ. No. LKG-21-0969, 2023 WL 8452448, at *22 (D. Md. Dec. 6, 2023) (dismissing indemnification claim as unripe).

Alternatively, BPD asserts that this Court should stay or bifurcate the indemnification claim pending resolution of the claims against Det. Min. (ECF No. 10-1 at 18 (citing *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991)).) This Court has frequently determined that bifurcation of *Monell* and related indemnification claims is appropriate in cases

45

alleging unconstitutional conduct by local officers pursuant to a pattern or practice of such conduct within a local government entity. *See, e.g.*, *Umana v. Prince George's Cnty.*, Civ. No. BAH-23-3208, 2025 WL 1685890, at *2–3 (D. Md. June 16, 2025); *Peprah v. Williams*, Civ. No. GLR-18-0990, 2019 WL 224245, at *10 (D. Md. Jan. 15, 2019); *Brown*, 2026 WL 145446, at *2; *Grim v. Balt. Police Dep't*, Civ. No. ELH-18-3864, 2020 WL 1063091, at *6–7 (D. Md. Mar. 5, 2020). Similarly, this Court has concluded that bifurcating and staying an indemnification claim against BPD is proper and serves judicial economy. *See, e.g.*, *Paylor*, 2025 WL 2306236, at *15 (collecting cases). For the purposes of judicial economy, however, it is not yet clear in this case whether discovery would be required solely for the indemnification claim or whether any bifurcation of the indemnification claim should await discovery or bifurcation as to Plaintiff's *Monell* claim.[21] Thus, BPD's request to bifurcate and stay any indemnification claim is premature at this early stage and is denied without prejudice.

### III.   Dismissal of Counts IV and VIII

Generally, leave to amend a complaint to address deficiencies in the original complaint is freely given pursuant to Rule 15(a). Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before dismissal of a case with prejudice. *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)). Nevertheless, leave to amend may be denied if such amendment is deemed futile. *Goode v. Cent. Va. Legal Aid Soc'y, Inc.,* 807 F.3d 619, 624 (4th Cir. 2015). As

---

[21]   Upon request of one or both parties, this Court has recognized that bifurcation of a *Monell* claim may be appropriate to the extent it depends on an "underlying constitutional violation by the employee." *Umana*, 2025 WL 1685890, at *3 (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001)); *see also Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991); *Grim*, 2020 WL 1063091, at *5 (collecting cases approving bifurcation).

explained above, Det. Min's Motion to Dismiss in this case is granted as to the 42 U.S.C. § 1983 claim for failure to intervene alleged against him in Count IV and the state-law abuse of process claim alleged against him in VIII.

As to the § 1983 claim for failure to intervene alleged against Det. Min in Count IV, Plaintiff has admitted that dismissal of such claim is proper and has not requested leave to amend that claim. Accordingly, dismissal of Count IV shall be WITH PREJUDICE. This Court deems it prudent, however, to afford Plaintiff the opportunity to amend his Complaint as to the abuse of process claim against Det. Min in Count VIII, should he possess facts sufficient to cure the manifest deficiencies identified above. Dismissal of Count VIII is thus WITHOUT PREJUDICE to the filing of an Amended Complaint within fourteen days of the date of this Memorandum Opinion and Order, i.e., by April 10, 2026. Such Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)).

## CONCLUSION

For the reasons stated above, Det. Min's Motion to Dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART.  Specifically, his Motion (ECF No. 11) is DENIED as to the claims against him in Counts I, II, III, VI, VII, and IX.  His Motion (ECF No. 11) is GRANTED as to Count IV and Count VIII.  Count IV is DISMISSED WITH PREJUDICE, while Count VIII is DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint within fourteen days of the date of this Memorandum Opinion and accompanying Order.

Relatedly, BPD's Motion to Dismiss (ECF No. 10) is DENIED.  Specifically, BPD's Motion (ECF No. 10) is DENIED as to the indemnification claim against it in Count X, although BPD may again raise the issue of bifurcating and staying that claim in subsequent filings, and it is DENIED as to Count V, which may proceed to the extent it alleges a *Monell* claim under a theory of failure to train.

A separate Order follows.


Date: March 27th, 2026                                      /s/_____
                                                           Richard D. Bennett
                                                           United States Senior District Judge

48